#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **MARK JAMIL JACOBS** | : | **NO. 00-313-3** |

### MEMORANDUM

**Savage, J.**                                                                                                    **May 28, 2025**

      Mark Jamil Jacobs moves for early termination of his ten-year term of supervised release. Noting his full compliance while on supervision for 98 months, he seeks early termination so that he may visit his incarcerated son. The government opposes the motion. It argues that his underlying crimes were serious and he "offers no legitimate reason that he is unduly harmed in any manner" by finishing his term of supervised release.[1] Probation also opposes the motion because he played a leading role in the serious underlying crimes.

      On January 8, 2001, Jacobs pleaded guilty to one count of conspiracy to distribute more than 50 grams of cocaine base, in violation of 21 U.S.C. § 846; three counts of distribution or possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1); three counts of distribution of cocaine base within 1,000 feet of a school, in violation of 21 U.S.C. § 860; six counts of use of a communication facility, in violation of 21 U.S.C. § 843(b); and one count of using a firearm during a drug trafficking crime, in violation of 18 U.S.C. § 924(c). The underlying conduct leading to these convictions occurred between 1998 and 2000, when Jacobs suffered from a drug addiction.

      Jacobs was initially sentenced to 404 months in prison. In 2011, his sentence was

---

[1] Gov't's Opp'n Def.'s Mot. Early Termination Supervised Release 1, Doc. No. 941.

reduced to 270 months as a result of the retroactive amendments to the crack cocaine provisions of the Sentencing Guidelines. In 2015, his sentence was again reduced to 228 months pursuant to Amendment 782 to the Sentencing Guidelines. He was released from prison and began serving his term of supervised release on February 14, 2017.

## *Discussion*

A court may, in its discretion, terminate a term of supervised release after one year "if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1). Before doing so, the court must consider the sentencing factors set forth in § 3553(a). *Id.* Despite the statutory mandate that a court consider all § 3553(a) factors, the Third Circuit Court of Appeals has noted that the need for a sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment is not relevant to the consideration of early termination of supervised release. *United States v. Murray*, 692 F.3d 273, 280 (3d Cir. 2012).

Supervised release is not intended to be a form of punishment. It is meant to assist the defendant integrating into the community. *United States v. Sheppard*, 17 F.4th 449, 454 (3d Cir. 2021) ("[T]he primary purpose of supervised release is to facilitate the integration of offenders back into the community rather than to punish them." (quoting *Murray*, 692 F.3d at 280)). It is a form of rehabilitation. *Id.* (citing *United States v. Johnson*, 529 U.S. 53, 59 (2000) ("Supervised release fulfills rehabilitative ends, distinct from those served by incarceration.")). Because supervised release is not a form of punishment, we do not accord much weight to the government and Probation's position that Jacobs must complete his term of supervised release because of the serious nature

of the underlying crimes.

When a court imposes a term of supervised release, it can only predict how the defendant will respond to the rehabilitative process. It does not have the benefit of a track record while under supervision. After a period of imprisonment and supervision, the defendant's conduct provides insight the sentencing court did not have when the sentence was imposed. A motion to terminate supervised release supplies a mechanism to reevaluate the efficacy of the rehabilitative process and the need for continuing supervision.

Jacobs was released from prison on February 14, 2017. Since then he has maintained full compliance with the terms of his supervised release. He is classified as a low risk level offender, reporting monthly online. He has been steadily employed and has maintained a stable residence. He has also satisfied all financial obligations.

Jacobs has demonstrated that he is rehabilitated. He will not benefit from continuing supervision. To the contrary, continuing supervision would have an adverse affect. Because he is on supervised release, the Pennsylvania Department of Corrections will not allow him to visit his incarcerated son at SCI Benner. Jacobs has not seen his son since November 2022, when his son was sentenced to 10-20 years in prison for third degree murder. Jacobs seeks to visit his son in prison and develop a relationship. Supervised release impedes his ability to nurture a relationship with his son.

We conclude that Jacobs' conduct while on supervision, consideration of the relevant § 3553(a) factors, and the interest of justice favor early termination. Therefore, we shall grant the motion.